**Brooks M. Foster, OSB #042873**
E-mail: bfoster@northwestlaw.com
**Megan S. Cook, OSB #095711**
E-mail: mcook@northwestlaw.com
**Brian D. Chenoweth, OSB#944991**
E-mail: brianc@northwestlaw.com
Chenoweth Law Group, PC
510 SW Fifth Avenue, Fifth Floor
Portland, OR  97204
Telephone:  (503) 221-7958
Facsimile:  (503) 221-2182

Of Attorneys for Plaintiff Heinrich Gerke

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **HEINRICH GERKE,**<br><br>**Plaintiff/Counterclaim-Defendant**<br><br>v.<br><br>**TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, a foreign corporation,**<br><br>**Defendant/Counterclaimant;**<br><br>**and VALLEY FORGE INSURANCE COMPANY, a foreign corporation,**<br><br>**Defendant.** | Case No. 3:10-CV-1035-AC<br><br>**PLAINTIFF GERKE'S RESPONSE TO TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA'S MOTION FOR SUMMARY JUDGMENT** |
| **TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, a foreign corporation;**<br><br>**Third-Party Plaintiff,** | |

v.

**TRANS LEASE, INC.,**

**Third-Party Defendant.**

Plaintiff Heinrich Gerke, by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, hereby responds in opposition to the Motion for Summary Judgment filed by Defendant Travelers Casualty Insurance Company of America ("Travelers").

This response is supported by the attached *Declaration of Brooks M. Foster in Support of Plaintiff Gerke's Response to Travelers Casualty Insurance Company of America's Motion for Summary Judgment* ("Foster Dec."), the attached Exhibits 1 through 35, and the pleadings and record on file with the Court. At the time of the filing of this response, the Court had not set a date for oral argument on the motion.

///

///

///

///

///

///

///

///

///

///

///

///

## TABLE OF CONTENTS

I.     Introduction ..................................................................................................7

II.    Statement of Facts ........................................................................................9

III.   Summary Judgment Standard ......................................................................18

IV.   Argument ....................................................................................................18

      A.     Travelers' Motion Should Be Denied Because Travelers Failed to Confer Pursuant to LR 7-1 .............................................................18

      B.     Travelers' Motion Must Be Denied Because Mr. Gerke Is in Substantial Compliance with the EUO and Legal Action Provisions of the Policy ................19

      C.     Travelers' Failure to Prove (1) Prejudice from Any Non-Performance, However Insubstantial, (2) the Unreasonableness of Mr. Gerke's Conduct, and (3) Its Own Diligence and Good Faith in Seeking Performance Further Precludes Summary Judgment ........................................................................22

      D.     Each Case Cited by Travelers in Support of Its Argument That Mr. Gerke Has Not Complied with Conditions Precedent Is Readily Distinguishable .................26

      E.     Contrary to Travelers' Argument, ORS 742.240 Does Not Require Dismissal of Plaintiff's Claims ................................................................27

      F.     If the Court Were to Find, as a Matter of Law, That Mr. Gerke Must Give Travelers a Second EUO in Order to Obtain Coverage, the Proper Remedy Would Not Be to Dismiss the Case, But to Order Mr. Gerke to Give a Second EUO ......29

      G.     If the Court Were Inclined to Dismiss Mr. Gerke's Claims Against Travelers, the Proper Form of Dismissal Would Be Without Prejudice ......................................30

V.     Conclusion ...................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Agricultural Insurance Co. v. Iglehart,*
    386 P.2d 145 (Okla. 1963) .......................................................................................30

*Bailey v. Universal Underwriters Insurance Co.,*
    258 Or. 201, 474 P.2d 746 (1970) .........................................................................24–25

*Bergholm v. Peoria Life Insurance Co.,*
    284 U.S. 489 (1932) .............................................................................................27–28

*Bowers v. Experian Info. Solutions, Inc.*
    Civ. No. 08-1436-AC, 2009 WL 2136632, at *1 (D.Or. July 15, 2009) ........................ 19

*C-Suzanne Beauty Salon, Ltd. v. General Insurance Co.,*
    574 F.2d 106 (2d Cir. 1978) .....................................................................................30

*Campbell v. Southland Corp.,*
    127 Or.App. 93, 871 P.2d 487 (1994) .......................................................................18

*Celotex Corp. v. Catrett,*
    477 U.S.317 (1986) ................................................................................................18

*Century  National  Fire Insurance Co. of Chicago, Ill. v. Black,*
    220 F.8 (9th Cir. 1915) ............................................................................................21

*Dockins v. State Farm Insurance Co.,*
    329 Or. 20, 985 P.2d 796 (1999) ..............................................................................20

*Double Eagle Golf, Inc. v. City of Portland,*
    322 Or 604 (1996) ..................................................................................................18

*Employers Insurance of Wausau, a Mutual Co. v. Tektronix Inc.,*
    211 Or. App. 485, 156 P.3d 105 (2007) .....................................................................26

*Federated Service Insurance Co. v. Granados,*
    133 Or. App. 5, 889 P.2d 1312 (1995) ...................................................................23–25

*George v. Connecticut Fire Insurance Co.,*
    201 P. 510 (Okla. 1921) ...........................................................................................30

*Gibson v. Group Insurance Co. of Michigan,*
    142 Mich. App. 271, 369 N.W.2d 484 (1985) ............................................................31

*Herman v. Valley Insurance Co.,*
    145 Or. App. 124, 928 P.2d 985 (1996)....................................................29–30

*Hoffman Construction Co. of Alaska v. Fred S. James & Co.,*
    313 Or. 464, 836 P.2d 703 (1992) ...........................................................26

*Jones v. General Motors Corp.,*
    139 Or App 244 (1996) ...........................................................................18

*Lusch v. Aetna Casualty & Surety Co.,*
    272 Or. 593, 538 P.2d 902 (1975) ...........................................23–25, 29–30

*McCullough v. Travelers Cos.,*
    424 N.W.2d 542 (Minn.1988)..................................................................28

*Northern Life Insurance Co. v. Burkholder,*
    134 Or. 401, 293 P. 919 (1930) (en banc) .................................................20

*Seeborg v. General Motors Corp.,*
    284 Or 695 (1978).................................................................................18

*Sutton v. Fire Insurance Exchange,*
    265 Or. 322, 326, 509 P.2d 418 (1973) ..........................................19, 20, 29

*Timberline Equipment Co., Inc. v. St. Paul Fire & Marine Insurance Co.,*
    281 Or. 639, 576 P.2d 1244 (1978) .........................................................26

*West v. State Farm Fire & Casualty Co.,*
    868 F.2d 348 (9th Cir. 1998) ............................................................26–27

*Wright v. State Farm Mutual Automobile Insurance Co.,*
    223 Or. App. 357, 196 P.3d 1000 (2008).................................................29

*Yeo v. State Farm Insurance Co.,*
    219 Mich. App. 254, 555 N.W.2d 893 (1996)..........................................30

**Statutes and Rules**

FRCP 56.................................................................................................18

ORS § 742.240 (2009) .......................................................................27–28

///

///

## RESPONSE TO TRAVELERS' MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

Mr. Gerke is a German immigrant with a language barrier who lost virtually his entire small business and source of income when his Matco tool truck was stolen, his tool inventory taken, and the truck torched and abandoned in a field in Hillsboro on December 4, 2009.  Shortly thereafter, his wife filed for divorce.  According to the pleadings filed by his insurers, Travelers and Valley Forge Insurance Company ("Valley Forge"), Mr. Gerke is a dishonest criminal and insurance fraud who somehow conspired to arrange for or participated in the loss even though he had absolutely no reason to do so and his cellular phone records clearly establish he was driving to Pullman, Washington in his passenger car to visit his daughter on the evening of the loss.  Throughout the processing of his insurance claim, Mr. Gerke faced hostility, intimidation, delay, meritless litigation over his prior recorded statements, and a strategy admittedly designed to obtain a "tactical advantage" over him when taking his examination under oath (EUO).  Mr. Gerke's insurers have paid nothing towards his claim, whose value grows with every passing day due to the loss of Mr. Gerke's business income and capital.

Now, without having properly conferred as required by LR 7-1, Travelers moves for summary judgment seeking dismissal of Mr. Gerke's claims for coverage.  He brings these claims under the "Commercial Insurance" and "Stor Pac" policies he purchased from Travelers. According to Travelers, the claims must be dismissed because Mr. Gerke filed them without first giving an EUO to Travelers, which its counsel had requested.

What Travelers fails to explain is that on August 20, 2010, Mr. Gerke gave an EUO to attorney Dan Thenell.  Mr. Thenell is the attorney who, while representing Travelers, had designated himself to take Mr. Gerke's EUO, and who had repeatedly demanded it on Travelers' behalf.  The EUO occurred within a few weeks after the filing of the Complaint and before Travelers had filed a single pleading.  At the time, Mr. Thenell, without explanation, purported to take the EUO solely on behalf of Valley Forge.  Now Travelers claims it terminated representation with Mr. Thenell on August 3, 2010, yet *nobody advised Mr. Gerke or his counsel*

*of this*, even though his counsel was writing letters to Mr. Thenell after that date while referencing Mr. Gerke's claims with both insurers. One of those letters had informed both insurers in writing that Mr. Gerke was making himself available for examination on August 20, 2010, and that he would object to any effort to examine him under oath a second time.

Mr. Gerke filed his civil claims against Travelers a few weeks prior to his EUO, but that was after Travelers declared it would deny his claim if he did not give an EUO on July 19, 2010. Travelers made this threat while it was in contempt of an order from Judge Keith R. Raines of the Circuit Court of Oregon of Washington County. The order required Travelers to produce every recorded statement of Mr. Gerke *within its possession or control*. Travelers produced recordings made on December 7 and 8, 2009, but withheld a longer recording made on December 21, 2009. At first, it withheld this recording lawfully while Judge Raines decided a joint motion to quash filed by Mr. Thenell on behalf of both Travelers and Valley Forge. When Judge Raines denied the motion, Valley Forge obtained a temporary stay of the order to produce the recordings, but *Travelers did not*.

The December 21, 2009, recording was in the possession and control of Travelers' counsel for weeks without being produced. During this delay, Travelers demanded Mr. Gerke's EUO while Valley Forge alone petitioned for a writ of mandamus to reverse Judge Raines's order. After the Oregon Supreme Court denied that petition, Mr. Thenell produced the final disputed recording.

Throughout the dispute over Mr. Gerke's prior recorded statements, Mr. Gerke communicated to his insurers the consistent position that he intended to cooperate and give them an EUO, but only after resolution of the issues regarding his prior recorded statements. Rather than respecting Mr. Gerke's right to the recordings and the need to reschedule his EUO until after those issues were resolved, Travelers unlawfully withheld the December 21, 2009, recording and unequivocally declared it would deny coverage. Mr. Gerke fulfilled his promise and gave an EUO to Mr. Thenell on August 20, 2010, after all the recordings were produced.

On this record, the present motion before the Court has no merit because Mr. Gerke is in

substantial compliance with the EUO provision of the policy or, in the very least, his substantial compliance is a triable question of fact.  In addition, Travelers has not even attempted to establish a condition of forfeiture defense, which requires it to prove that it was substantially prejudiced, that it acted diligently and in good faith to obtain Mr. Gerke's performance, *and* that Mr. Gerke acted unreasonably.  Each of these elements poses additional questions of material fact that preclude summary judgment.

Travelers cites a few cases and a statute in support of its motion, but they are distinguishable or irrelevant and Travelers overlooks the controlling authorities that require its motion to be denied.  Finally, even if Travelers' motion had some merit, the proper remedy would be for the Court to order Mr. Gerke to appear for a second EUO or to dismiss the case without prejudice.

## II.  STATEMENT OF FACTS

Mr. Gerke presents the following timeline of facts:

**Friday, December 4, 2010**:  At approximately 5:30 pm, Mr. Gerke drives his Matco tool truck, containing his entire inventory of new, saleable tools to his office at 8557 SW Pinebrook Street, Portland, Oregon 97224 ("Pinebrook").  *Id*. at 95:9.  He parks the truck there and stays long enough to run a closing report for the day.  *Id*. at 141:1–4, 144:17.  He leaves the premises around 6:00 p.m. and drives to the Wilsonville Costco in his passenger car (a Passat) to pick up some CDs containing pictures of his daughter, who he is going to visit in Pullman, Washington, where she attends college.  *Id*.; 145:8–147:6.  It takes him about 10 to 15 minutes to drive to the Wilsonville Costco from Pinebrook.  *Id*. at 146:12–13.  After picking up the pictures at Costco, Mr. Gerke eats dinner at the nearby Panda Express.  *Id*. at 146:24–147:1.  He then leaves Wilsonville and drives up I-5 to I-205 and onto I-84.  *Id*. at 147:5–12.  He stops for gas in Troutdale.  *Id*. at 151:22–25.  He continues his drive to Pullman, Washington, along I-84 through The Dalles and Hermiston.  *Id*. at 147:20–148:6.

During this drive, at approximately 10:00 p.m., Mr. Gerke receives a call from the Hillsboro Fire Department notifying him that his Matco tool truck had been stolen and set on

fire. Foster Decl. ¶ 3, Ex. 1 at 153:8–11; 161:15–20.  The caller describes Mr. Gerke's Matco tool truck and asks if he is the owner of the truck.  *Id*. at 161:17–20.  Mr. Gerke confirms this and the caller tells him the truck has been stolen and set on fire.  *Id*.  Mr. Gerke calls his wife and asks her to go to his office on Pinebrook to confirm whether his truck is still there because he does not want to believe it is gone.  *Id*. at 154:12–14.

In disbelief, Mr. Gerke calls his wife and asks her to go to his office and tell him whether the truck is still there.  *Id*. at 154:12–14.  He continues his drive to Pullman.  *Id*. at 158:7–16. When his wife calls, she confirms the truck is gone.  *Id*.  Mr. Gerke considers returning home but decides to continue on because he has not seen his daughter in 11 years, he had been planning the visit for weeks, and the fire marshal tells him there is nothing he can do about his truck until Monday.  *Id*., 123:16–19, 124:18–22.  After stopping for a short nap to ward off fatigue, Mr. Gerke arrives in Pullman on the morning of December 5, 2009.  *Id*. at 150:10-24.

**Monday, December 7, 2009:**  Mr. Gerke places a call to Travelers and notifies it of the loss.  Foster Decl. ¶ 4, Ex. 2.  A Travelers representative takes a statement of Mr. Gerke over the phone, where he answers questions about the facts and circumstances of the loss.  Foster Decl. ¶ 46, Ex. 35 at 2.  Travelers records the statement.  *Id*.  Mr. Gerke also notifies Valley Forge of the loss.  Foster Decl. ¶ 3, Ex. 1 at 154:23–25; ¶ 18, Ex. 16 at 2:12–14.

**December 8, 2009:**  A representative of Valley Forge takes a second recorded statement of Mr. Gerke over the phone.  Foster Decl. ¶ 20, Ex. 18; ¶ 18, Ex. 16 at 2:15–16.

**December 21, 2009:**  Mr. Gerke makes a third recorded statement.  Foster Decl. ¶ 18, Ex. 16 at 2:17–18.  This statement is taken by a private investigator hired by Valley Forge, who meets with Mr. Gerke in person.  *Id*.; Foster Decl. ¶ 3, Ex. 1 at 152:11–13.

**January 19, 2010**:  Attorney Dan Thenell of Smith Freed & Eberhard, PC, writes to Mr. Gerke's former counsel, Paul Vames, stating that his office represents Valley Forge and requesting production of certain documents.  Foster Decl. ¶ 5, Ex. 3.  Mr. Thenell asserts that any documents provided to him will be "considered by both Valley Forge and Travelers."  *Id*.  He advises Mr. Vames that his office intends to take Mr. Gerke's EUO after receiving the requested

documents.  *Id.*

**January 20, 2010**:  Mr. Thenell writes to Mr. Vames on behalf of Travelers requesting production of numerous documents.  Foster Decl. ¶ 6, Ex. 4.

**January 28, 2010**:  Mr. Thenell writes to Mr. Vames on behalf of Valley Forge reiterating that Valley Forge intends to take Gerke's EUO and stating that the insurers will "consolidate" their document requests.  Foster Decl. ¶ 7, Ex. 5.

**March 26, 2010**:  Mr. Thenell writes to Mr. Vames on behalf of both insurers regarding the status of the claim and investigation.  Foster Decl. ¶ 8, Ex. 6.  Mr. Thenell reiterates his request for Mr. Gerke to produce all responsive documents and says he will schedule Mr. Gerke's EUO after the documents are produced.  *Id.*

**May 6, 2010**:  Mr. Thenell speaks with Mr. Gerke's new counsel, Brooks Foster of the Chenoweth Law Group, by phone.  Foster Decl. ¶ 10, Ex. 8; ¶ 12, Ex. 10.  They discuss scheduling Mr. Gerke's EUO on May 27, 2010.  *Id*.  Mr. Foster asks Mr. Thenell to provide him with copies of any recorded statements taken from Mr. Gerke.  *Id*.  Mr. Thenell declines to produce them on the grounds that the claim is under investigation.  Foster Decl. ¶ 9, Ex. 7

**May 7, 2010**:  Mr. Thenell's associate, attorney Jillian Hinman, informs Mr. Foster that one of her clients is not available on May 27, 2010, so the EUO will have to be scheduled for a later date.  Foster Decl. ¶ 10, Ex. 8.

**May 14, 2010**:  Mr. Gerke produces at least 2,758 pages of documents.  Foster Decl. ¶ 12, Ex. 10.

**May 18, 2010**:  Mr. Foster writes to Mr. Thenell regarding the termination of Mr. Gerke's Matco franchise as a result of the loss and the threatened claim by Trans Lease, Inc. arising from its interest in the destroyed Matco truck.  Foster Decl. ¶ 10, Ex. 8.  Mr. Foster asks whether there is any legitimate reason to deny the claim.  *Id*.  Mr. Foster urges the insurers to begin paying the claim.  *Id*.

**May 19, 2010**:  Mr. Thenell writes on behalf of Travelers and Valley Forge,  proposing an examination under oath on June 23, 2010, at Mr. Thenell's office.  Foster Decl. ¶ 11, Ex. 9.

Mr. Thenell asserts this is the first time the insurers have attempted to schedule the examination. *Id.* Mr. Thenell asserts it is reasonable to delay the EUO until his clients are available to attend. *Id.* Mr. Thenell writes, "I will take the examination under oath *for the insurance companies*." *Id.* (emphasis added)

**June 2, 2010:** Mr. Gerke's counsel in his pending divorce case, Herb Weisser, serves each insurer with a subpoena requiring delivery to Mr. Weisser's office of "any and all . . . recorded statements made by Gerke that are within the possession or control of" each of them. Foster Decl. ¶ 13, Ex. 11.

**June 8, 2010:** Mr. Thenell writes to Mr. Foster and Mr. Weisser, advising them of his position that his office intends to move to quash the subpoenas if they are not withdrawn, that he believes the issuance of the subpoenas is "a violation of Oregon Rule of Professional Conduct 8.4" (which prohibits conduct prejudicial to the administration of justice) and that he expects Mr. Gerke to give an EUO on June 25, 2010. Foster Decl. ¶ 14, Ex. 12.

**June 8, 2010:** Mr. Weisser writes to Mr. Thenell that he has a right to the recorded statements pursuant to ORCP 36 B(3), which provides: "A party may obtain, without the required showing [of substantial need and undue hardship ordinarily necessary to obtain work product], a statement concerning the action or its subject matter previously made by that party." ORCP 36 B(3); Foster Decl. ¶ 15, Ex. 13.

**June 14, 2010:** Mr. Foster writes to Mr. Thenell, confirming that he and Mr. Gerke remain committed to working cooperatively with Mr. Thenell and his clients to provide an EUO. Foster Decl. ¶ 16, Ex. 14. Regarding the scheduling of the EUO, Mr. Foster writes:

> "If your clients comply with the subpoenas and produce the statements by June 18, 2010, then Mr. Gerke's examination can take place at [Mr. Foster's] office on June 25, 2010. If your clients withhold the statements and/or file a motion to quash, a court will need to decide whether they are discoverable before Mr. Gerke can be examined. As a result, it may become necessary to postpone Mr. Gerke's examination." *Id.*

**June 17, 2010:** Mr. Thenell, still representing both Travelers and Valley Forge, obtains a copy of the December 8, 2009, recorded statement of Mr. Gerke taken by Valley Forge's

representative.  Foster Decl. ¶ 46, Ex. 53 at 3.  Mr. Thenell writes a letter to Mr. Foster asserting: "It is not reasonable to postpone the examination under oath because of subpoenas issued by Mr. Weisser" and "[t]he examination under oath will not be postponed."  Foster Decl. ¶ 17, Ex. 15.

**June 18, 2010:**  Mr. Thenell, still representing both insurers, obtains a copy of the December 21, 2009, recorded statement of Mr. Gerke taken by the private investigator retained by Valley Forge.  Foster Decl. ¶ 46, Ex. 53 at 3.  Travelers and Valley Forge file a joint motion to quash the subpoenas issued by Mr. Weisser.  Foster Decl. ¶ 18, Ex. 16.

**June 24, 2010:**  Mr. Foster writes to Mr. Thenell:

> "I understand your clients are withholding Mr. Gerke's previously recorded statements and you have filed a motion to quash the subpoenas issued by Herb Weisser.  As stated in my letter dated June 14, 2010, 'If your clients withhold the statements and/or file a motion to quash, a court will need to decide whether they are discoverable *before Mr. Gerke can be examined*.'  (Emphasis added).
>
> I understand Judge Raines of Washington County will be hearing your motion to quash on June 30, 2010.  After Judge Raines decides your motion to quash, it will be your choice whether or not to examine Mr. Gerke under oath.  At that time, if you choose, Mr. Gerke will submit to an examination at my office (as is the local custom) and we will work cooperatively with you to schedule it."

Foster Decl. ¶ 19, Ex. 17.

**July 7, 2010:**  After a hearing, Oregon Circuit Court Judge Keith Raines of Washington County signs an order denying the insurers' joint motion to quash.  Foster Decl. ¶ 20, Ex. 18. The order provides:

> "**The Insurers [Travelers and Valley Forge] are required to produce all audio recordings of Respondent Heinrich Gerke in their possession and control**, including but not limited to the recorded statement taken by Valley Forge Insurance Company on or about December 8, 2009, and the additional recorded statement taken by Valley Forge Insurance Company on or about December 21, 2009; recorded statement taken by Travelers Insurance Company on or about December 7, 2009."

*Id*. (emphasis added).

That same day, Judge Raines signs an order to stay enforcement of the subpoena issued to Valley Forge.  Foster Decl. ¶ 21, Ex. 19.  The order provides:

> "Enforcement of the civil subpoena duces tecum issued to Valley Forge Insurance
> Company in this case is stayed for thirty (30) days.  Production required by Aug.
> 6, 2010 @ 5 pm."

*Id.*  Judge Raines never orders a stay of the subpoena issued to Travelers or the order requiring Travelers to produce all of the recorded statements of Mr. Gerke within its possession or control. Foster Decl. ¶ 21.  Mr. Thenell asserts that Valley Forge needs the stay to allow it to delay compliance with the subpoena until it has the opportunity to petition the Oregon Supreme Court for a writ of mandamus to order Judge Raines to grant Valley Forge's motion to quash.  Foster Decl. ¶ 22, Ex. 20.

**July 8, 2010:**  Mr. Thenell delivers to Mr. Gerke's counsel, Herb Weisser, the recorded statement taken by Travelers on December 7, 2009, the recorded statement taken by Valley Forge on December 8, 2009, and a letter dated July 7, 2010.  Foster Decl. ¶ 23. Mr. Thenell does not produce the recorded statement taken by Valley Forge's private investigator on December 21, 2009.  *Id*.  Mr. Thenell's failure to produce this recorded statement, which was within his possession and control  as attorney for Travelers, is in violation of Judge Raines's July 7, 2010, order.  *Id*.

**July 15, 2010**:  Mr. Thenell delivers a letter to Mr. Gerke's counsel, written as counsel for Travelers.  Foster Decl. ¶ 24, Ex. 21.  The letter makes no mention of Valley Forge.  *Id*.  The letter also fails to explain why Travelers continued to withhold Mr. Gerke's December 21, 2009, recorded statement.  *Id*.  Overlooking Travelers' apparent contempt, the letter states:

> "Travelers will afford **one more opportunity** for Mr. Gerke to comply with the
> policy and attend his examination under oath.  Travelers **demands** your client
> submit to examination under oath on July 19, 2010, at 9:00 a.m., at our offices . . .
> Travelers will make reasonable accommodations to Mr. Gerke if that date
> presents a problem.  However, **Travelers expects Mr. Gerke to comply with the
> demand for examination** pursuant to the policies.
> * * *
> In light of the prior history of noncompliance, please be aware that **if Mr. Gerke
> fails to comply** with the demand for examination under oath, **his claims will be
> denied** as he will be in material breach of both the cooperation and examination
> under oath conditions of the contract."

*Id*. (emphasis added).

Page 13 -   PLAINTIFF GERKE'S RESPONSE TO TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA'S MOTION FOR SUMMARY JUDGMENT

**July 19, 2010:**  Mr. Gerke does not appear at Mr. Thenell's office for an examination under oath.  Foster Decl. ¶ 25.

**July 20, 2010:** Valley Forge files its petition for writ of mandamus with the Oregon Supreme Court.  Foster Decl. ¶ 26, Ex. 22.

**July 29, 2010, at 1:12 pm:**  Mr. Gerke files his complaint against Travelers.  Foster Decl. ¶ 28.

**July 29, 2010, at 3:49 pm:**  Mr. Gerke's counsel receives a faxed letter from Mr. Thenell, written on behalf of Travelers.  Foster Decl. ¶ 27, Ex. 23.  The letter states:

> "Travelers is willing to give your client the opportunity to provide dates he is available for the examination under oath.  Please contact my office by August 6, 2010, with dates your client is available to submit to examination under oath.  If my office has not heard from you by August 6, 2010, Travelers will likely deny your client's claims based on his breach of the policy conditions requiring him to cooperate in Travelers investigation and submit to examination under oath."

*Id.*

**August 3, 2010:**  Mr. Gerke mails his opposition to Valley Forge's petition for mandamus to the Oregon Supreme Court.  Foster Decl. ¶ 29, Ex. 24.

**August 3, 2010:**    According to Travelers' response to interrogatories, Travelers terminates its representation by Mr. Thenell and substitutes attorney Lloyd Bernstein of Gordon & Polscer LLC in his place.  Foster Decl. ¶ 47, Ex. 36.  Nobody informs Mr. Gerke or his counsel of this substitution.  Foster Decl. ¶ 30.

**August 3, 2010:**    Mr. Foster writes to Mr. Thenell, referencing both Travelers and Valley Forge.  Foster Decl. ¶ 31, Ex. 25.  Explaining the filing of the Complaint against Travelers, Mr. Foster writes:

> "Your July 15 letter unequivocally asserted that Mr. Gerke's claims would be 'denied' if he failed to appear at your office for an examination under oath on July 19, 2010.  I understood you were referring to Mr. Gerke's coverage with Travelers.  Mr. Gerke did not appear at your office on July 19, 2010, to be examined.  Therefore, it was concluded, based on your unequivocal representation in your July 15 letter, that Mr. Gerke's claim was denied by Travelers.  Consequently, my client instructed me to prepare and file a complaint."

*Id*.  Regarding Mr. Thenell's request for an EUO, Mr. Foster writes:

> "Notwithstanding his Complaint against Travelers, and as I have explained several times, Mr. Gerke is more than willing to schedule his examination under oath after the issues raised by your motion to quash are resolved. By continuing to litigate those issues and failing to produce all of Mr. Gerke's recorded statements, you are causing unnecessary delay in the scheduling of Mr. Gerke's examination."

*Id*.

**August 4, 2010:**  Valley Forge files a motion for Judge Raines to extend the stay of the subpoena to Valley Forge for an additional 30 days.  Foster Decl. ¶ 32, Ex. 26.  That same day, the Oregon Supreme Court denies Valley Forge's mandamus petition without opinion.  Foster Decl. ¶ 33, Ex. 27.  The motion to extend the stay was not granted.  Foster Decl. ¶ 33.  Mr. Weisser faxes a letter to Mr. Thenell stating his expectation that the recordings will be delivered to Mr. Weisser's office by no later than 5 p.m. on August 6, 2010, as required by Judge Raines's July 7, 2010, order that stayed the subpoena to Valley Forge for 30 days.  Foster Decl. ¶ 34, Ex. 28.

**August 5, 2010:**  Mr. Foster writes to Mr. Thenell, referencing Mr. Gerke's claims with both Travelers and Valley Forge.  Foster Decl. ¶ 53, Ex. 29.  Regarding the filing of the Complaint against Travelers, Mr. Foster explains:

> "if you still wish to take Mr. Gerke's examination, please provide me with dates between August 18 and 31, 2010, when you wish to do so.  Any examination will take place at my office.  Because a complaint has been filed, the examination will be conducted according to the rules for depositions under the Oregon Rules of Civil Procedure and any applicable local rules.  We will expect you to be prepared to ask Mr. Gerke any and all questions you may have regarding his insurance claim.  After you have examined and deposed him, Mr. Gerke will object to any attempt to re-examine him under oath or depose him a second time later in the case."

*Id*.

**August 6, 2010:**   Mr. Thenell fails to deliver the disputed December 21, 2009, recorded statement to Mr. Weisser's office. Foster Decl. ¶ 36.

**August 9, 2010:**  Mr. Thenell delivers the December 21, 2009 recorded statement to Mr.

Weisser's office.  *Id.*

**August 11, 2010:**  Travelers receives service of the Complaint.  Foster Decl. ¶ 37, Ex. 30.

**August 13, 2010:**  Mr. Thenell responds with a letter in which he refers only to Valley Forge and makes no mention of Travelers.  Foster Decl. ¶ 38, Ex. 31.  Mr. Thenell does not say that he no longer represents Travelers or that Travelers has new counsel.  *Id.*  Mr. Thenell writes:

> "Valley Forge is exercising its rights under the contract to take your client's examination under oath.  This matter is not in litigation and the Oregon Rules of Civil Procedure do not apply.  Further, as the policy states, your client has a duty to submit to examinations under oath at our request.  If Valley Forge reasonably elects to request your client submit for multiple examinations under oath, he has a duty under the contract to agree."

*Id.*

**August 17, 2010:**  Mr. Gerke's counsel replies in a letter referencing both Travelers and Valley Forge:

> "We hereby confirm Mr. Gerke's availability for an examination and/or deposition on August 20, 2010, at 9:00 a.m., at the offices of the Chenoweth Law Group.  If you will require any special accommodations other than the use of our conference room, please let me know as soon as possible."

Foster Decl. ¶ 39, Ex. 32.

**August 20, 2010**:  Mr. Thenell takes Mr. Gerke's EUO, purporting to do so on behalf of Valley Forge, with Valley Forge's representative present.  Foster Decl. ¶ 40.  Mr. Thenell says nothing about any substitution of counsel for Travelers and does not explain why he does not purport to be taking the EUO on behalf of Travelers as well as Valley Forge.  *Id.*

**August 25, 2010**:  Mr. Thenell writes to Mr. Foster on behalf of Valley Forge, saying his investigation is ongoing, no coverage determination has been made, and he expects to request additional documents before completing Valley Forge's investigation.  Mr. Thenell again fails to mention any substitution of counsel for Travelers.  Foster Decl. ¶ 41, Ex. 33.

**September 2, 2010:**  Lloyd Bernstein takes his first action as attorney for Travelers in this matter by filing a motion for removal of the case to Federal court.  Foster Decl. ¶ 42, Ex. 34.

Prior to this action, Gerke and his counsel had no reason to believe that Mr. Thenell had stopped representing Travelers and that a new law firm had been assigned to do so.  Foster Decl. ¶ 42.

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  If "there is a genuine issue of material fact, summary judgment is precluded."  *Campbell v. Southland Corp.*, 127 Or. App. 93, 871 P.2d 487 (1994).  The burden is on the moving party to establish the absence of a genuine issue of material fact.  *Jones v. Gen. Motors Corp.*, 139 Or. App. 244, 256–257 (1996).  If the moving party meets this initial burden, then the non-moving party can defeat the motion by identifying facts that reveal a genuine issue of material fact.  *Id.* at 257.  In making this determination, all reasonable inferences drawn from the facts must be viewed in the light most favorable to the non-moving party; any reasonable doubt as to the existence of a material fact must also be resolved against the moving party.  *Id.*; *Double Eagle Golf, Inc. v. City of Portland*, 322 Or 604, 606 (1996); *Seeborg v. Gen. Motors Corp.*, 284 Or. 695, 699 (1978).  Furthermore, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).

### IV.  ARGUMENT

**A.    Travelers' Motion Should Be Denied Because Travelers Failed to Confer Pursuant to LR 7–1.**

Travelers failed to confer with counsel for Mr. Gerke before it filed the present motion and is therefore in violation of LR 7-1.  Travelers filed its motion without first notifying Mr. Gerke's counsel of its intent to do so.  Foster Decl. ¶ 44.  There was no conferral between counsel for Travelers and Mr. Gerke as to whether the parties could resolve their dispute over Travelers' desire to dismiss the claims due to Mr. Gerke's alleged non-performance of the EUO condition.  *Id.*  Prior to filing the motion, Travelers' counsel asked in an e-mail whether Mr. Gerke would give a second EUO, but said nothing about a motion for summary judgment.  *Id.*

Travelers does not mention that request for a second EUO in its motion.  Therefore, it should be considered a different dispute than the one that is the subject of the motion.  There was no conferral under LR 7-1.

Judge King of the District Court of Oregon recently adopted an opinion of Judge Acosta regarding LR 7-1, which stressed that the purpose of this rule is to encourage parties to resolve disputes out of court in order to preserve judicial resources.  *See Bowers v. Experian Info. Solutions, Inc.*, Civ. No. 08-1436-AC, 2009 WL 2136632, at *1 (D.Or. July 15, 2009).  According to *Bowers*, "[i]f the rule is to mean anything . . . its substantive requirements must be met" and the "remedy for a violation of LR 7.1(a) is denial of the motion."  *Id*.  Further, "the authority to exercise the remedy lies within the district court's discretion."  *Id*.  As in *Bowers*, "it is difficult to know" what would have occurred if Travelers had conferred with Mr. Gerke.  *Id*. at *3.  Therefore, Mr. Gerke respectfully requests that the Court deny Travelers' motion based on Travelers' failure to confer pursuant to LR 7-1.

**B.    Travelers' Motion Must Be Denied Because Mr. Gerke Is in Substantial Compliance with the EUO and Legal Action Provisions of the Policies.**

Travelers' motion relies on the false premise that the law requires strict compliance with the "EUO" and "Legal Action" provisions of the policies.  The EUO provision states:

> "We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records."

Bernstein Decl., Ex. A at 5.  The Legal Action provision states:  "No one may bring a legal action against us under this Coverage Form until there has been full compliance with all the terms of this Coverage Form."  *Id*. at 6.

Travelers' position that Mr. Gerke's suit must be dismissed unless he can show strict compliance with these provisions is erroneous because Oregon law requires only substantial compliance with an insured's obligations under an insurance contract.  *See, e.g.*, *Sutton v. Fire Ins. Exch.*, 265 Or. 322, 325–26, 509 P.2d 418 (1973) ("Substantial, as distinguished from strict, compliance of the proof of loss requirement is all that is required;" citing with approval

examples of substantial compliance from other jurisdictions in which an insured's proof of loss was deemed substantially compliant); *Dockins v. State Farm Ins. Co.*, 329 Or. 20, 27–28, 985 P.2d 796 (1999) (explaining that Oregon cases regarding the adequacy of an insured's compliance with proof of loss provisions "speak in terms of substantial compliance"); *N. Life Ins. Co. v. Burkholder*, 134 Or. 401, 404, 293 P. 919 (1930) (en banc) ("[T]he courts have permitted the insured considerable freedom of action; they have held that substantial compliance with the regulations is sufficient, and have assigned to the word 'substantial' a liberal interpretation.").

In *Sutton*, the insured "furnished all that the policy required except that the insured did not affix his signature under oath to the information furnished." 265 Or. at 325–26. The insurer argued this was a breach of the insured's obligations under the policy sufficient to defeat any claim for coverage. *See id.* at 324. The jury found for the insured, but the trial court entered a judgment notwithstanding the verdict in favor of the insurer on the grounds that "there was insufficient evidence of substantial compliance to make a jury issue." *Id.* at 323, 325. The Oregon Supreme Court reversed the trial court and instructed it to reinstate the jury verdict because "with such evidence the jury could find that the insured substantially complied." *Id.* at 326. The Court did not strictly enforce the signature under oath requirement as a condition precedent to the insured's filing of its lawsuit even though the policy "contained a provision that no action on the policy could be sustained 'unless all the requirements of this policy shall have been complied with[.]'" *Id.* at 324. *Sutton* also establishes that the issue of substantial compliance is generally a question of fact for the jury. *Id.* at 326.

Mr. Gerke is in substantial compliance with both the EUO and Legal Action provisions of the Travelers' policies. Mr. Gerke produced over 2,700 pages of documents to his insurers. Ex. 10. When his divorce attorney issued subpoenas requiring production of his prior recorded statements, to which he was entitled under ORCP 36 B(3), both insurers withheld the recordings and moved to quash. Ex. 16. Judge Raines denied the motion but then stayed the subpoena to Valley Forge until August 6, 2010, to allow a petition for mandamus without staying the

subpoena to Travelers.  Exs. 18–19.  The Oregon Supreme Court denied Valley Forge's petition for mandamus without opinion.  Ex. 27.  Mr. Thenell did not produce the December 21, 2009 recorded statement to Mr. Gerke until August 9, 2010 even though Travelers was  required to produce it on July 7, 2010.  *Id.*

The evidence shows that Travelers and Valley Forge waged a campaign of litigation to obtain a "tactical advantage" by attempting to bully Mr. Gerke into giving an EUO before he could review his prior recorded statements, to which Judge Raines and the Oregon Supreme Court decided he was lawfully entitled.  Ex. 22 at 9.  Throughout this period, in spite of their dilatory tactics, Mr. Gerke repeatedly and consistently informed his insurers that he intended to cooperate and provide an EUO, but only after resolution of the parties' dispute over the recorded statements.  *See* exs. 7, 8, 10, 14, 17, 25, 29 and 32.  When Travelers declared it would deny Mr. Gerke's claim if he did not appear for an EUO on July 19, 2010, even while it withheld the December 21, 2009, statement in apparent contempt of Judge Raines' order, Mr. Gerke filed suit against Travelers but continued to offer himself to both insurers for an EUO.  Ex. 25.

In order to effectively request an EUO, an insurer must identify the individual who will be conducting the examination.  *See, e.g.*, *Cent. Nat. Fire Ins. Co. of Chicago, Ill. v. Black*, 220 F.8, 13 (9th Cir. 1915) (holding the insurer must designate a representative before whom an examination will be taken as well as a place for the examination before an insured's non-appearance for examination will create a defense to coverage).  In a letter dated May 19, 2010 Mr. Thenell designated himself to take the examination of Mr. Gerke on behalf of both Travelers and Valley Forge.  Ex. 9.  ("I will take the examination under oath for the insurance companies.").  In a letter dated July 28, 2010—which Mr. Gerke's counsel received *after* filing Mr. Gerke's complaint against Travelers—Mr. Thenell wrote that Travelers was "willing to give [Mr. Gerke] the opportunity to provide dates he is available for the [EUO]."  Ex. 23.  In a letter dated August 17, 2010, after Mr. Gerke had finally received all of his recorded statements, Mr. Gerke's counsel wrote to Mr. Thenell, referencing the claims with both Travelers and Valley Forge:  "We hereby confirm Mr. Gerke's availability for an examination and/or deposition on

August 20, 2010, at 9:00 a.m., at the offices of the Chenoweth Law Group." Ex. 32.

Mr. Gerke gave an EUO to Travelers' designee, Mr. Thenell, on August 20, 2010, before Travelers had filed a single pleading in response to the Complaint.  Foster Decl. ¶ 40.  There, Mr. Thenell purported without explanation to be representing only Valley Forge even though Mr. Gerke had written that he would be available for examination by both insurers and that he would object to any request for a second EUO.  *Id*.  At that time, Mr. Gerke and his counsel had never been informed of Travelers present assertion that it substituted Mr. Bernstein for Mr. Thenell as its counsel on August 3, 2010.  *Id*. ¶ 40.  Even if that were true, Mr. Gerke's willingness to give an EUO after resolution of the recorded statement dispute and his appearance for an EUO by Travelers' appointed designee, Mr. Thenell, would constitute substantial, or even full, compliance with the EUO and Legal Action provisions of the Travelers' policies.  In the very least, the evidence raises a genuine issue of material fact regarding Mr. Gerke's substantial compliance, which is sufficient to defeat Travelers' motion.

**C.**     **Travelers' Failure to Prove (1) Prejudice from Any Non-Performance, However Insubstantial, (2) the Unreasonableness of Mr. Gerke's Conduct, *and* (3) Its Own Diligence and Good Faith in Seeking Performance Further Precludes Summary Judgment.**

The condition that Mr. Gerke provide an EUO at Travelers' request is a condition of forfeiture.  When an insurer attempts to escape coverage by alleging an insured's non-performance of a condition of forfeiture, Oregon courts place the burden on the insurer to make the additional showings of prejudice, unreasonableness, and diligence.  Travelers has failed to even attempt to make these showings.  Instead, it apparently takes the position that they are irrelevant, in spite of controlling case law to the contrary.  Mr. Gerke's substantial compliance with the EUO and Legal Action provisions of the policies preclude summary judgment; but even if they did not, Travelers' failure to address these additional condition of forfeiture requirements would require denial of its motion.

Oregon courts distinguish between conditions of forfeiture on the one hand and

conditions or exclusions of coverage on the other. *E.g.*, *Federated Serv. Ins. Co. v. Granados* ("*Granados*"), 133 Or.App. 5, 8, 889 P.2d 1312 (1995). According to *Granados*, "[a]n exclusion relates to the scope of coverage, while a condition of forfeiture exists if 'there is insurance coverage for the loss in the first place, but acts of the insured nullify the coverage[.]" *Id.* at 8, n. 2.

*Granados* held that a consent-to-settle provision in a liability policy, which required the insured to obtain its insurer's consent before settling the underlying claim, was a condition of forfeiture. *Id.* at 7–8. The provision did not relate to the scope of coverage, but raised a question about whether acts of the insured after the loss could nullify coverage that otherwise existed. *Id.* at 8.

*Lusch v. Aetna Cas. & Surety Co.*, 272 Or. 593, 538 P.2d 902 (1975), upon which *Granados* relied for authority, is the seminal case regarding conditions of forfeiture. There, the Oregon Supreme Court held that a notice provision in a liability insurance policy, which required the insured to give the insurer notice of an accident "as soon as practicable," was a condition of forfeiture subject to the prejudice and reasonableness requirements. *Id.* at 595, 600. It made no difference that the policy contained a Legal Action provision that stated, "No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy[.]" *See id.* at 595. The Court followed controlling precedent rather than give the policy a strict interpretation, declaring, "this reasoning that insurance policies should be interpreted according to their literal meaning is no longer acceptable." *Id.* at 600.

To summarize the condition of forfeiture analysis, *Lusch* concluded:

"[T]he first inquiry should be whether the notice of accident was received in time for the insurer to make a reasonable investigation and adequately protect its interest and that of the insured. Stated conversely, **the first inquiry should be whether the insurer was prejudiced** by the insured's failure to give earlier notice of the accident.

If notice from any source was sufficiently timely so that the insurer could adequately investigate and protect itself, thereby suffering no prejudice, the

insurer is bound to fulfill its policy obligations. Whether the insured acted reasonably is immaterial.

However, **if the insurer could not adequately investigate or otherwise protect itself**, thereby suffering prejudice, **then the relevant inquiry is whether the insured acted reasonably** in failing to give notice at an earlier time. If the insured did act reasonably, the insurer is obligated to perform."

*Id.* at 599–600.

As explained in *Lusch*, the element of prejudice requires more than some insubstantial disadvantage or inconvenience to the insurer.  To prove prejudice, the insurer in *Lusch* was required to convince a jury, at minimum, that it "could not adequately investigate or otherwise protect itself" as a result of the insured's conduct.  *Id.* at 599.  In addition, the insurer was required to persuade a jury that the insured's conduct was unreasonable.  *Id.* at 599–600.  Only by prevailing on both of those questions could the insurer prove a forfeiture of coverage.  *Id.* at 600.

Consistent with *Lusch*, *Granados* held that an insured's breach of a consent-to-settle provision or any other condition of forfeiture cannot relieve an insurer of liability unless "the insurer was prejudiced by the [insured's] conduct" and the insured did not act "reasonably in breaching the . . . provision."  *Id.* at 9.  Whether the insurer suffered substantial prejudice and whether the insured acted unreasonably are questions of fact for a jury.  *See id.*

Any new questions about the burden of proof in a condition of forfeiture analysis are answered by *Bailey v. Universal Underwriters Ins. Co.*, 258 Or. 201, 474 P.2d 746 (1970) cited in *Lusch*.  According to *Bailey*,

"Since the insurer is the party who is seeking to avoid the burdens of the insurance contract by alleging the defense of non-cooperation, it follows that **the insurer has the burden to establish all of the elements of that defense**, including the performance of its duty to exercise reasonable diligence and good faith."

*Id.* at 225.  If the insurer has the burden of proving every element of the defense of non-cooperation, a condition of forfeiture under *Grenados*, then, by analogy, Travelers bears the burden of proving every element of its condition of forfeiture defenses against Mr. Gerke (i.e.

both prejudice and unreasonableness).

Moreover, the requirement from *Bailey* that the insured prove it exercised reasonable diligence and good faith in attempting to obtain the insured's compliance with a condition of forfeiture works hand in hand with the prejudice and unreasonableness requirements to ensure that insurers do not abuse the rights afforded by their insurance policies. *Id.* at 223 (requiring insurer to show both prejudice and diligence). Travelers should be required to prove not only prejudice and unreasonableness, but also that it acted with reasonable diligence and in good faith to obtain Mr. Gerke's EUO.

Like the consent-to-settle provision in *Granados*, the notice provision in *Lusch*, and the cooperation provision in *Bailey*, the EUO provision at issue here is a condition of forfeiture that requires proof of prejudice, unreasonableness, and diligence to provide a defense. The EUO provision does not relate to the scope of coverage, but it can raise a question about whether acts of the insured after the occurrence of a covered loss could nullify coverage. Therefore, it fits Oregon's definition of a condition of forfeiture. Just as in *Lusch*, the Legal Action provision upon which Travelers relies has no effect on this condition of forfeiture analysis and Travelers' literalistic reading of the policy "is no longer acceptable." 272 Or. at 600.

Applying the condition of forfeiture rules from *Granados*, *Lusch*, and *Bailey* to the EUO condition at issue here, there are genuine issues of fact as to whether Mr. Gerke's conduct in connection with Travelers' request for an EUO was both prejudicial and unreasonable. *Lusch*, where the insurer sought to escape coverage based on the timing of a notice, is closely analogous because Travelers is attempting to escape liability based on a dispute over the timing of Mr. Gerke's EUO. Travelers, however, does not even *attempt* to foreclose questions of fact regarding its prejudice, diligence, and good faith or Mr. Gerke's reasonableness, completely overlooking these requirements from controlling case law.

Mr. Gerke was examined under oath by the lawyer designated by both Travelers and Valley Forge to examine him. The EUO occurred within a few weeks after Mr. Gerke filed his Complaint against Travelers and before Travelers had filed a single pleading. At that time,

nobody had informed Mr. Gerke or his counsel that Travelers had, as it now claims, substituted Mr. Bernstein as its counsel in place of Mr. Thenell.  Mr. Gerke reasonably rescheduled his EUO after his recorded statements were produced to him.  Any delay was the result of his insurer's attempt to obtain a "tactical advantage" over him at his EUO.  Even if Travelers had attempted, in its motion, to prove the elements of prejudice, diligence, good faith, and unreasonableness, it could not do so.  In the very least, these are questions of fact for the jury and Travelers' motion must be denied.

**D.    Each Case Cited by Travelers in Support of Its Argument That Mr. Gerke Has Not Complied with Conditions Precedent Is Readily Distinguishable.**

Travelers relies on five cases to support its argument that Mr. Gerke has not complied with conditions precedent to coverage under the Travelers policies.  Of these five cases, only three fall under Oregon law and none of them discuss conditions of forfeiture.

First, Travelers cites to *Timberline Equip. Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 281 Or. 639, 576 P.2d 1244 (1978).  In *Timberline*, the parties disputed the meaning of a coverage exclusion regarding an insured's commercial products.  *Id.* at 642.  Unlike *Timberline*, the motion before the court does not turn on the disputed interpretation of any coverage exclusion.  Travelers raises no coverage exclusions in support of its motion and does not argue that the loss falls outside the scope of coverage.  Instead, resolution of Travelers' motion depends on the application of Oregon law regarding substantial compliance and conditions of forfeiture.  *Timberline* is inapplicable.

The second case cited by Travelers is *Employers Ins. of Wausau, a Mutual Co. v. Tektronix Inc.,* 211 Or. App. 485, 156 P.3d 105 (2007).  Like *Timberline*, this case involved a dispute over the meaning of a coverage exclusion.  211 Or. App. at 492.  Again, the court had no reason to consider substantial compliance or conditions of forfeiture and the case has no bearing here.

Third, Travelers cites *Hoffman Constr. Co. of Alaska v. Fred S. James & Co.*, 313 Or. 464, 836 P.2d 703 (1992).  *Hoffman* addressed a dispute over the meaning of a term that defined

the limit of liability in an umbrella liability insurance policy.  *Id.* at 468.  The dispute revolved around the scope of coverage, not around substantial compliance or a condition of forfeiture. The case is irrelevant.

Travelers cites *West v. State Farm Fire & Cas. Co*, 868 F.2d 348, 351 (9th Cir. 1998), for the proposition that an insured must submit to a EUO as a condition precedent to coverage. *Mem. in Support of Defendant Travelers Casualty ins. Co. of America's Mot. for Summ. J.* ("Travelers' Mem.") at 4.  In *West*, the District Court for the Eastern District of California applied California law, not Oregon law, so it does not apply to this Oregon case.  868 F.2d at 350.  Moreover, the case is factually distinguishable.  In *West*, the insured refused to answer questions while under oath; the insured's wife and daughters failed to appear at their scheduled EUOs and never offered to appear at a later date; and the insured failed to provide *any* "documentation proving the existence or value of the items he alleged were stolen." *Id.* at 349, 351.  In contrast, Mr. Gerke repeatedly advised Travelers of his willingness to be examined under oath after resolution of the parties' disagreement regarding his prior recorded statements. Exs. 7, 8, 10, 14, 17, 25, 29 and 32.  After Mr. Gerke prevailed in that dispute, he submitted to an EUO and answered the questions posed to him.  Foster Decl. ¶ 40.  In addition, Mr. Gerke produced over 2,700 pages of documents, including documents substantiating the value of the stolen and destroyed property.  Ex. 10.  Given that it applies the wrong body of law and reflects significant differences between virtually all of the operative facts, *West* does not support Travelers' motion.

Travelers' fifth case is even further afield, and Travelers' reliance upon it even more puzzling.  *Bergholm v. Peoria Life Ins. Co.*, 284 U.S. 489 (1932), for the contention that an insured must "present proof of a disability as a condition precedent to payment under the policy." Travelers' Mem. at 5.  *Bergholm* was decided under Texas law so, like *West*, it has no application to this Oregon case.  *See Peoria Life Ins. Co. v. Bergholm*, 50 F.2d 67, 67–68 (5th Cir. 1931).  Moreover, Mr. Gerke is seeking coverage for stolen items, not a disability.  This is not a case where the insured has died, the policy has lapsed, or the insurer has paid any benefits

whatsoever. *Bergholm* provides no authority for Travelers' motion.

**E.    Contrary to Travelers' Argument, ORS 742.240 Does Not Require Dismissal of Plaintiff's Claims.**

Travelers argues that ORS 742.240 somehow "operates to require dismissal of Plaintiff's claims in this case for failure to comply with the conditions of the policy."  Travelers' Mem. at 5. This argument fails on multiple grounds.

First, ORS 742.240 provides no defense to coverage.  It only requires that any "fire insurance policy" issued by Travelers in Oregon include the following provision:

> "No suit or action on this policy for recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 24 months next after inception of the loss."

ORS 742.240.  Therefore, it is wrong for Travelers to assert that ORS 742.240 has *any* effect on Mr. Gerke's claims.

Second, Travelers assumes without analysis that the Travelers' "Commercial Insurance" and "Stor Pac" policies at issue here are "fire insurance policies" within the meaning of ORS 742.240.  Yet the policies do not contain the precise language required by ORS 742.240. *Compare* Bernstein Decl., Ex. A at 2 ("No one may bring a legal action against us . . . .") *with* ORS 742.240 ("No suit or action . . . shall be sustainable . . . .").  This difference is meaningful because courts have held that whether an action is "sustainable" is different than whether a person may "file" or "commence" an action.  *E.g.*, *McCullough v. Travelers Cos.*, 424 N.W.2d 542, 544 (Minn. 1988) (holding that a "sustainable" provision refers to the ultimate recovery in the case and does not create a condition precedent to filing suit).  To the extent Travelers contends the Legal Action provision in its policies has the same meaning as the provision required by ORS 742.240, then the "sustainable" language would control.  Travelers would have no grounds to complain about the timing of Mr. Gerke's suit because he has given an EUO, he is in full or substantial compliance with the EUO condition (*see supra* Part B), and his claims against Travelers are therefore sustainable and in compliance with ORS 742.240.

Third, Travelers appears to rely on ORS 742.240 because it requires fire insurance policies to include a two-year limitations provision and such provisions are not subject to condition of forfeiture rules or any requirement that Travelers show prejudice. *See Herman v. Valley Ins. Co.*, 145 Or. App. 124, 130–33, 928 P.2d 985 (1996) (requiring strict compliance with two-year limitations provision). According to *Herman*,

> "A condition of forfeiture disallows claims that otherwise are covered under a policy. A suit limitation provision, by contrast, does not nullify insurance coverage. Rather, it precludes an insured from starting an action against its insurer once the limitation period has passed, regardless of the extent of coverage."

*Id.* at 131; *see also Wright v. State Farm Mut. Auto. Ins. Co.*, 223 Or. App. 357, 370–71, 196 P.3d 1000 (2008) ("the 'suit limitation provision' in *Herman* was a contract condition, but neither a condition of forfeiture nor a condition of coverage"). Thus, the two-year limitations period required by ORS 742.240 is a "suit limitation provision" that operates much like a statute of limitations. *Herman*, 145 Or. App. at 131. It is not a condition of forfeiture nor a condition of coverage, and it does not require the insurer to prove prejudice in order to use it as a defense. *Id.* at 130–33.

*Herman* does not support Travelers' motion because the Legal Action provision is not a suit limitation provision and there is no question that Mr. Gerke brought his action within two years of the loss. As stated in *Herman*, a "suit limitation provision . . . precludes an insured from starting an action against its insurer once the limitations period has passed[.]" 145 Or. App. at 131. The Legal Action provision upon which Travelers' motion relies has a different purpose and cannot be considered a suit limitation provision.

*Herman* recognizes the differences between a suit limitation provision and the Legal Action provision at issue here. 145 Or. App. at 131 (distinguishing, without overturning, condition of forfeiture cases). If the Legal Action provision were strictly and literally applied to every term or condition of the policies, as Travelers advocates, it would overturn decades of case law and controlling Oregon Supreme Court precedent regarding substantial compliance and conditions of forfeiture. Such a misapplication of *Herman* would be clear error. *See, e.g.*,

*Lusch*, 272 Or. at 600 ("[T]his reasoning that insurance policies should be interpreted according to their literal meaning is no longer acceptable.").

The Legal Action provision states, "No one may bring a legal action against us under this Coverage Form until there has been full compliance with all the terms of this Coverage Form." Bernstein Decl., Ex. A at 2.  Virtually identical provisions were part of the policies at issue in *Sutton*, 265 Or. at 324, and *Lusch*, 272 Or. at 595, discussed above.  The provisions had no effect on the substantial compliance and condition of forfeiture analyses applied by the Oregon Supreme Court in those cases.  *See supra* Parts B, C.  Likewise, the Legal Action provision cannot be strictly applied here to circumvent Mr. Gerke's substantial compliance and Travelers' failure to prove the condition of forfeiture elements.  ORS 742.240 and *Herman* do not support Travelers' motion for summary judgment, which must be denied.

**F.    If the Court Were to Find, as a Matter of Law, That Mr. Gerke Must Give Travelers a Second EUO in Order to Obtain Coverage, the Proper Remedy Would Not Be to Dismiss the Case, But to Order Mr. Gerke to Give a Second EUO.**

Even if the Court were to find, as a matter of law, that Mr. Gerke must give Travelers a second EUO in order to obtain coverage, the proper remedy would not be to dismiss the case, but would be to order Mr. Gerke to give a second EUO.  Many courts have held or recognized that an insured should have the opportunity to comply with an EUO provision and thereby establish substantial compliance or remove any alleged prejudice so as to avoid dismissal of its action. *See C-Suzanne Beauty Salon, Ltd. v. Gen. Ins. Co.*, 574 F.2d 106, 110–111 (2d Cir. 1978) (affirming order of trial court to this effect); *see also George v. Conn. Fire Ins. Co.*, 201 P. 510, 513 (Okla. 1921) (holding trial court should have directed insured to answer certain EUO questions deemed material, which insured had refused in good faith to answer, rather than dismissing case); *Agric. Ins. Co. v. Iglehart*, 386 P.2d 145, 147–148 (Okla. 1963) (affirming trial court's order for the insured to sign the EUO transcript within a reasonable time so as to avoid dismissal of the action).  The rulings of these courts are sensible and just.  If the Court were to

find that Mr. Gerke must give Travelers a second EUO in order to obtain coverage, the Court should order Mr. Gerke to do so rather than dismissing his claims.

**G.    If the Court Were Inclined to Dismiss Mr. Gerke's Claims Against Travelers, the Proper Form of Dismissal Would Be Without Prejudice.**

Even if the Court were inclined to order dismissal of Mr. Gerke's claims against Travelers, the proper form of dismissal would be without prejudice. *See Yeo v. State Farm Ins. Co.*, 219 Mich. App. 254, 258, 555 N.W.2d 893 (1996) (holding a dismissal for noncompliance with a request for an examination under oath is without prejudice).   Travelers' appointed designee already took Mr. Gerke's EUO while purporting to do so only on behalf of Valley Forge, and without any notice to Mr. Gerke or his counsel of any substitution of counsel for Travelers.  This record would raise significant triable issues such as waiver, estoppel, substantial compliance, prejudice, unreasonableness, and diligence even if Mr. Gerke had waited until after his EUO to sue Travelers.  Dismissal without prejudice would allow these issues to be tried even if the Court were to agree that Mr. Gerke's filing of suit prior to his EUO were grounds for dismissal.

///

///

///

///

///

///

///

///

///

///

///

///

PLAINTIFF GERKE'S RESPONSE TO TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA'S MOTION FOR SUMMARY JUDGMENT

## V.  CONCLUSION

The Court should deny Travelers' motion for summary judgment for the following reasons: (1) Travelers failed to confer with counsel for Mr. Gerke prior to filing the motion in violation of LR 7-1; (2) Mr. Gerke is in substantial compliance with the terms of the policy, and (3) Travelers has failed to so much as an attempt to make a showing of prejudice, unreasonableness, and diligence concerning Mr. Gerke's actions surrounding the EUO. Travelers' motion fails to foreclose all genuine issues of material fact and must be denied.  Even if it were granted, the proper remedy would be an order for Mr. Gerke to give a second EUO or a dismissal without prejudice.

DATED this 25th day of March, 2011.


CHENOWETH LAW GROUP, PC


s/ Brooks Foster
BROOKS FOSTER, OSB #04287
Telephone:  (503) 221-7958
Of Attorneys for Heinrich Gerke