IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

HEINRICH GERKE,                                    3:10-CV-1035-AC

        Plaintiff,                          OPINION AND ORDER

        v.

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA, a foreign
corporation,

        Defendant/Counterclaimant

        and

VALLEY FORGE INSURANCE COMPANY,
a foreign corporation,

        Defendant.
_____

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA, a foreign
corporation,

        Third-Party Plaintiff,

        v.

TRANS LEASE, INC.,

        Third-Party Defendant.
_____

ACOSTA, Magistrate Judge

        This opinion and order resolves the parties' dispute over disclosure of Plaintiff's expert's

file in this insurance coverage lawsuit.

Page 1 - OPINION AND ORDER

*OPINION*

*Background*

Plaintiff hired Rob Painter to give an expert opinion whether plaintiff intentionally burned his Matco Tools truck, as defendant insurers claim. Expert disclosures and depositions were to be completed by the end of October 2012, but Painter's deposition did not occur by the deadline. The parties deferred his deposition after a dispute arose over the scheduling of Painter's deposition, as well as which side would bear the cost of Painter's travel to Portland for his deposition and the cost of his time to testify at deposition.

On November 3, 2012, Plaintiff filed a motion for protective order regarding the scheduling of and payment arrangements for Painter's deposition. During the November 7, 2012, hearing on Plaintiff's motion, Defendants asserted they had not yet received documents from Painter's file, which documents they needed prior to deposing Painter. Following the hearing, the court issued an order memorializing its rulings at the hearing, which order reads in relevant part:

> 5.  Plaintiff shall produce to Defendants those portions of Painter's file not excluded from discovery by Federal Rule of Civil Procedure 26(b )( 4), excluded documents specifically being Painter's draft reports, and documents containing facts, data, or assumptions from Plaintiff's counsel to Painter. Any document containing such information and also containing attorney work-product must be produced in redacted form. Letters and emails from Plaintiff's counsel to Painter to which are attached discoverable information must also be produced, in redacted form if necessary. Plaintiff shall produce to Defendants a category-based privilege log of the documents in Painter's file withheld from production.

Defendants deposed Painter on November 16, 2012. During Painter's deposition a dispute arose whether Plaintiff had produced all discoverable portions of Painter's file for this case. The parties' lawyers contacted the court by telephone during the deposition to obtain a ruling on their dispute. Defendants' counsel argued that Plaintiff had not produced all

Page 2 - OPINION AND ORDER

discoverable materials from Painter's file, that Plaintiff's counsel had not reviewed Painter's file before producing discoverable documents from his file, and that Painter had been instructed not to answer questions whether Plaintiff's counsel had written any portion of Painter's expert report. Plaintiff's counsel responded he had complied with the court's order by producing to Defendants all documents from Painter's file not already in Defendants' possession and had provided a privilege log of the documents withheld under claim of attorney work-product privilege, and further contended the privilege precluded disclosure of draft reports and information about counsel's assistance in preparing the expert's report.

After hearing argument from both sides, the court ordered Painter and each party's counsel to submit documents to the court. The court's November 16, 2012, minute order memorializes the court's rulings during the deposition:

> **MINUTES of Proceedings:** Telephone Discovery Conference held by Judge Acosta addressing issues arising during the deposition of plaintiff's expert, Mr. Painter. It is hereby ORDERED that: 1) Mr. Painter shall produce to the court for in camera review no later than November 30, 2012, the entirety of his file contents regarding his consulting engagement in this case. "File contents" is to be interpreted and applied as broadly as possible and shall include but not be limited to the expert report prepared and produced in this case, letters, emails, notes, deposition transcripts, affidavits, drafts of reports, reports of other experts, work product of other experts, data, drawings, diagrams, schematics, retainer agreements, and any other document, whether in hard-copy or digital form, contained in Mr. Painter's file, whether or not Mr. Painter read, reviewed, consulted, studied, or considered the document, and from whatever source received, be that source plaintiff's counsel, other experts, assistants, lay persons, or any other source. Mr. Painter is not to consult with plaintiff's counsel or any other person when determining which file documents to include in his submission to the court, and he is to err on the side of being inclusive of materials about which he is uncertain are within the scope of the court's order to produce his "file." Mr. Painter may include a cover letter explaining his inclusion of such documents, if desired. Mr. Painter is not to copy plaintiff's counsel or defendants' counsel with his submission to the court. 2) Plaintiff's and defendants' counsel may submit to the court the portions of Mr. Painter's file plaintiff's counsel produced to defendants counsel, no later than November 30, 2012, those submissions to be served on all other counsel. 3) Mr. Painter is to

> answer at deposition questions regarding whether other persons provided information included in his expert report and whether other persons, including but not limited to plaintiff's counsel, wrote portions of his final report, and whether Mr. Painter included in his final report portions written by others in edited or unedited form.

(Order of November 16, 2012, Dkt. No. 120.)

As ordered, Painter, Plaintiff's counsel, and Defendants' counsel submitted their materials to the court by the November 30, 2012 deadline. Painter's file consists of four file folders generally organized by type of document: one file contains printed emails exchanged between Painter and Plaintiff's counsel, and between Plaintiff's counsel and Defendants' counsel; one file contains Painter's report; and two files contains reports of Defendants' experts. Painter's file also includes two DVD disks labeled with the case name and titled "Truck Raw Footage." In addition, the folders also contain a complete unredacted copy of Painter's consulting agreement, five case summaries from jury verdict reporting services in which Painter testified as a witness, emails exchanged between Painter and Plaintiff's counsel in preparation for the depositions of Defendants' experts, a document entitled "Preliminary Report," dated October 18, 2012, and a second preliminary report document, with attachments, dated October 18, 2012. Painter's file contains no letters, working notes, entries of time spent reviewing materials and preparing his report, deposition transcripts, recorded or printed statements or interviews, drawings, or any other materials.

Plaintiff's counsel submitted a three-and-one-half-inch three-ring binder represented to contain all of Painter's file materials produced to Defendants. The binder included a cover letter identifying each produced document and setting forth Plaintiff's position, with supporting authority, regarding the correctness of Plaintiff's disclosure of Painter's file. Defendants' counsel jointly submitted their own three-ring binder of Painter's file materials received from

Page 4 - OPINION AND ORDER

Plaintiff and accompanied their binder with a cover letter that contained a list of the binder's contents. Defendants also included in their binder the complete transcript of Painter's November 16, 2013, deposition, a highlighted mini-transcript of the deposition, and a DVD copy of the deposition.

*Issues*

The parties' dispute turns on the extent to which the attorney work-product privilege protects a lawyer's communications with a testifying expert and the contents of an expert's file under Federal Rule of Civil Procedure 26(b). Defendants' specific issues are these:

1.    Plaintiff's counsel did not review Painter's file before producing documents from Painter's file to defendants.

2.    Painter did not bring his file to his deposition.

3.    Plaintiff produced as Painter's "file" only a handful of documents to defendants, consisting of redacted emails and redacted excerpts of Painter's retainer agreement.

4.    In some of the emails plaintiff produced there are reference to documents transmitted with the emails but those documents are not mentioned in Painter's written expert report.

5.    Plaintiff's counsel instructed Painter to not answer questions inquiring whether anyone other than Painter, including Plaintiff's counsel, wrote portions of Painter's expert report.

6.    Painter's unredacted retainer agreement should be produced.

7.    Plaintiff's counsel could not have provided defendants with an accurate privilege log because he did not review Painter's file.

Defendants acknowledge plaintiff produced these materials:

1.      Plaintiff's October 22, 2012, Rebuttal Expert Disclosures.

2.      Plaintiff's November 15, 2012, Amended Rebuttal Expert Disclosures.

3.      A & R Forensic Auto Lab November 15, 2012, invoice with Spirit Airlines confirmation.

4.      Painter's "file," as previously described above.

5.      Plaintiff's privilege log regarding Painter's file.

Plaintiff's counsel responds that although he did not review Painter's file, he inquired of Painter about the contents of the file to inform his production of documents from Painter's file and his preparation of the privilege log, and that he believes both the production to Defendants and the content privilege log are complete.  Plaintiff's counsel also states he provided Painter with various documents to review and he produced copies of those documents to defendants. Plaintiff's counsel further observes that Painter's written expert report contains a list of the documents Painter considered in reaching his opinion, so defendants are aware of the documents and information Painter relied upon in this case.  Finally, plaintiff's counsel contends that draft reports are protected from disclosure under the express language of Rule 26(b)(4), regardless of who authored the draft or any portion of it.

Plaintiff represents he produced these documents to defendants:

1.      Plaintiff's October 22, 2012, written expert report ("Painter Report").

2.      Exhibit A to Painter Report, curriculum vitae of Rob Painter.

3.      Exhibit B to Painter Report, October 15, 2013, Declaration of Ryan Luton.

4.      Exhibit C to Painter Report, photocopy of disc containing digital photos.

5.      Printouts of digital photos contained on disc.

Page 6 - OPINION AND ORDER

6.    Exhibit D to Painter Report, photos of intact GMC C5500 truck.

7.    Exhibit E to Painter Report, December 22, 2009, Hillsboro Fire Department Investigation Report.

8.    Plaintiff's November 15, 2012, Amended Rebuttal Expert Disclosures.

9.    Two discs containing a November 1, 2012, video of plaintiff's burned truck.

10.    Plaintiff's November 17, 2012, privilege log regarding Painter file.

11.    Redacted copies of documents labeled GERKE285091-96 from Painter file.

12.    Painter's November 15, 2012, invoice.

13.    Letter from Dr. Ron Jones, DO, labeled GERKE285087, regarding Painter's medical condition.

Plaintiff also points out he did not produce to defendants those documents given to Painter that plaintiff received from defendants, and which Painter considered, because defendants already had those documents in their possession. Plaintiff identifies those documents as these:

1.    August 17, 2012, report of defendants' expert, Darryl Stoutsenberger (considered by Painter and listed in his report, but not attached to his report).

2.    August 17, 2012, report of defendants' expert, Bernard Maddox (considered by Painter and listed in his report, but not attached to his report).

3.    Gerke truck diagram, labeled TRUCK # 06-097, in digital format.

4.    Gerke Final Report by defendants' non-testifying expert Richard Benzo of L&W Investigations, dated May 31, 2012, in digital format.

5.    Summit Body Works documents, including November 22, 2011, Ryan Luton Declaration, ProVan vehicle quote, and diagram.

Page 7 - OPINION AND ORDER

6.      General Motors documents produced in response to August 17, 2011, subpoena,

Bates Nos. GMLLC000000001-25.

*Standard*

Federal Rule of Civil Procedure 26(b) governs disclosure of expert witness materials.  In

relevant part, the rule reads:

(4) *Trial Preparation:  Experts.*

&ast; &ast; &ast; &ast;

(B) Trial-Preparation Protection for Draft Reports or Disclosures.  Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.

© Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses.  Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:

(I) relate to compensation for the expert's study or testimony;

(ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

(iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

(5) *Claiming Privilege or Protecting Trial-Preparation Materials.*

(A) Information Withheld.  When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(I) expressly make the claim; and

(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Page 8 - OPINION AND ORDER

Federal Rule of Civil Procedure 37, entitled "Failure to Make Disclosures or to Cooperate in Discovery; Sanctions," sets out the consequences to a party who fails to make required discovery or does not comply with court-ordered discovery. In relevant part, the rule reads:

**(b) Failure to Comply with a Court Order.**

(2) *Sanctions in the District Where the Action Is Pending.*

(A) *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent – or a witness designated under Rule 30(b)(6) or 31(a)(4) – fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

\* \* \* \*

(c) *Payment of Expenses.* Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

*Discussion*

I.     Counsel's Failure to Review Expert's File

Numerous cases address the question of what materials from an expert's file must and must not be disclosed, but little guidance exists on the question whether a lawyer must actually review a retained expert's case file in preparation for making the disclosures required by Rule 26(b)(4). The rational answer is a lawyer must review the expert's file. Although Rule 26 does not address this precise question, its language establishes boundaries for disclosure and non-disclosure of expert materials which cannot be accomplished without counsel's meaningful review of the expert's file's contents. Finding this requirement subsumed in Rule 26(b)'s directives is a reading consistent with the certifications a lawyer is deemed to make when filing or submitting documents pursuant to obligations imposed by other rules. Under Rule 11, a lawyer who files a document with the court certifies he or she has made a "reasonable inquiry" that the content of the document is true. Under Rule 26(g), a lawyer making discovery disclosures, responses, requests, and objections certifies he or she has made a "reasonable inquiry" that the response is complete and correct. The "reasonable inquiry" determination is governed by an "objective reasonableness" standard. *In re Keegan Management. Co., Securities Litigation*, 78 F.3d 431, 434 (9th Cir. 1996).

Finding this requirement subsumed within Rule 26(b) also is sensible because it furthers the purposes served by the discovery rules. First, the discovery process is the foundation of every civil case and under the rules it is conducted by lawyers without court oversight. The integrity of the process depends on lawyers to perform the duty of disclosure imposed by the rules to ensure that all discoverable information – whether favorable or unfavorable to that lawyer's client – is provided to the opposing party. That duty cannot be fully met if lawyers

Page 10 - OPINION AND ORDER

certify that all discoverable documents from a file have been produced without ever having reviewed the file or by leaving to a lay person – even an expert witness – the task of determining which documents the rules require be disclosed to the opposing party.[1]

Second, the obligation to review an expert's file to determine its producible contents certainly is present, if not heightened, when production of the expert's file is court ordered. Discovery orders issue usually because a lawyer or a party has not met the discovery rules' requirements to disclose all producible information. The court's order to make discovery imposes on the lawyer a direct duty to the court to produce the documents that are the subject of the order. A lawyer cannot fulfill that duty unless he or she reviews the actual documents at issue to determine whether they fall within the scope of the court's order.

Plaintiff's expert disclosure in this case illustrates the importance of lawyer review because some documents contained in Painter's file do not appear in the binder containing the expert disclosure materials Plaintiff produced to Defendants, and they are not listed as withheld documents on the privilege log Plaintiff served on Defendants. Painter's file contains individual summaries from jury verdict reporting services of four lawsuits in which Painter gave expert testimony, as well as a complete copy of an appellate case in which Painter is not mentioned. The summaries and appellate opinion were not produced to Defendants and they do not appear on Plaintiff's privilege log. Unclear is how Painter obtained the summaries and appellate opinion, the purpose for which he obtained them, and what bearing, if any, they had on his opinion in the case. The explanation might be that Plaintiff's counsel did not know Painter's file

---

[1] A lawyer can carry out this duty by delegating the task to another qualified legal professional, such as a less senior lawyer or paralegal working under a lawyer's supervision, so long as the file actually is reviewed to ensure that all discoverable documents are produced and all documents withheld on claim of privilege are listed on a privilege log.

contained the summaries and appellate opinion.  If true, that explanation demonstrates why counsel must actually review a retained expert's case file as part of the expert disclosure process. If Plaintiff's counsel did know Painter's file contained the summaries and appellate opinion, it is unclear why they were not produced; the summaries and appellate opinion hardly can be claimed as attorney work-product because all appear to be publically available documents.  If Plaintiff's counsel thought them work-product, then there is no explanation why he did not list them on the privilege log he provided to Defendants.

Painter's file also contains an entire file folder of email communications between Plaintiff's counsel and Painter, some with attachments and some which indicate attachments but to which nothing is attached.  Plaintiff's privilege log consists of one and one-half pages and lists emails by three broad categories of date groups, not by individual Bates number, specific date, subcategory, or other specific identifier.  This format makes virtually impossible comparison of Painter's file contents against Plaintiff's counsel's privilege log.  As for the redacted emails Plaintiff produced to Defendants as Painter's "file" at his deposition, those emails are not contained in their original or redacted form in the file Painter submitted to the court.  Their absence from Painter's file casts doubt on the completeness of Painter's file disclosure.  All of these issues could have been avoided if Plaintiff's counsel had reviewed Painter's file.

The court concludes that Plaintiff's counsel did not meet Rule 26's expert disclosure requirements and did not comply with the court's November 7, 2012, order when he failed to review Painter's file before producing documents to Defendants.  This failure disrupted Painter's deposition, required Defendants to incur additional time and expense to prepare and submit materials to the court for *in camera* review, and will require that Painter's deposition be reconvened to allow Defendants to question Painter about the non-disclosed documents.  The

Page 12 - OPINION AND ORDER

additional documents that must be disclosed and the sanction for failing to make discovery under the court's order and Rule 37 are described in the "*Order*" section at the end of this opinion.

II.    Counsel's Participation in Preparing Expert's Report

During Painter's November 16, 2012, deposition, defense counsel asked Painter whether anyone other than Painter wrote any portion of his October 22, 2012, report.  (Deposition of Robert Painter ("Painter Dep.") 46.)    Plaintiff's counsel asserted the attorney work-product privilege and instructed Painter to answer the question without disclosing "communications with counsel." (Painter Dep. 47.)  Plaintiff's counsel then asked Painter:  "Outside of that universe, did anyone help you write the report?"  (Painter Dep. 47.)  "No," was Painter's answer.  (Painter Dep. 47.)  Defendant's counsel then asked Painter whether Plaintiff's counsel or any member of his firm wrote portions of Painter's report; Plaintiff's counsel again asserted the attorney work-product privilege and instructed Painter not to answer the question.   (Painter Dep. 47-48.) Defendant's counsel responded that they were "entitled to know if [Plaintiff's counsel] or the members of [his] firm wrote any of the report." (Painter Dep. 48.)

Counsel subsequently contacted the court for assistance in resolving this and other disputes that arose during Painter's deposition.  After hearing from all counsel on this issue, the court ruled as follows:

> THE COURT:  All right.  There is one other issue not covered by that order, and that is the question whether anyone else wrote any portion of Mr. Painter's report that has been produced to defense counsel.  That is a proper question, and Mr. Painter has to answer it.
>
> It is not uncommon for retained experts to have assistants or junior engineers, for example, prepare portions of reports under the supervision of the consulting expert.  That may or may not be the case here with Mr. Painter.  And there may have been other individuals who prepared text, paragraphs, sections, portions of the report. Mr. Painter is required to answer that question and identify the people who may have drafted any portion of his report, and he has to identify the

portions of the report that those other individuals drafted.

MR. THENELL:   Including anybody from the plaintiff's office, correct? Plaintiff's attorney's office?

THE COURT:  That's exactly right.

MR. THENELL:  Okay.

MR. FOSTER:  Well, Your Honor, I'd like to make a record on that point.

THE COURT:  Well, you can.  But let me make a point first.  Mr. Foster, if you or any lawyer in your office wrote portions of Mr. Painter's report, sent them to him, and told him to include that in his report, that is discoverable by the defendants.  That is not work product.

MR. FOSTER:  Well, Your Honor, you are the judge.  I would like to make a record that --

THE COURT:  Well, go ahead.

MR. FOSTER:  -- under Rule 26(b)(4), drafts, as I read the rule, are strictly protected from exclusion -- or from production.

THE COURT:  Drafts are, but if you wrote a paragraph or a section of his report, sent it to him, and told him to include it, that goes directly to Mr. Painter's credibility.  It's one thing to talk to the expert about the topics to be covered and any gaps, holes, or lack of clarity in an expert's report.  But if you write portions and he adopts them or incorporates them in their entirety or in substantial form, then that goes to Mr. Painter's credibility because, Mr. Foster, you are not the expert; Mr. Painter is.  This is supposed to be his opinion, not the opinion of his lawyer or his client.  And that goes at least to the credibility of the expert's testimony, and it may well go to the admissibility at trial or on motion of the expert's opinion.  Because then you have a [*Daubert*] issue.

So, I know what the rule says.  I also know that lawyers are not supposed to write their experts' reports or any portion of them.  And if that's happened here, then that goes to credibility and it goes to admissibility, and Mr. Painter has to answer those questions.

(Painter Dep. 69-71.)[2]

---

[2]  The court's minute order summarized this ruling as follows: "3) Mr. Painter is to answer at deposition questions regarding whether other persons provided information included in

Once Painter's deposition continued, defense counsel asked him "did anybody besides yourself write any portions of your report?" (Painter Dep. 72.) Painter responded: "I wrote this report. The conclusions and opinions are all mine, but [Plaintiff's counsel] helped me clean it up, edit it, make it more professional, if you will." (Painter Dep. 72.) Defense counsel then asked Painter to identify the portions of the report, by paragraph, that Plaintiff's counsel wrote. (Painter Dep. 72.) Ultimately, Painter stated that he could not identify which paragraphs Plaintiff's counsel might have written without comparing the report to his original draft. (Painter Dep. 75-76, 80-81, 86, 92.) Painter said he emailed his original draft to Plaintiff's counsel in Word format and Plaintiff's counsel "cleaned it up," but he could not specify which words or portions Plaintiff's counsel changed without seeing his original draft. (Painter Dep. 84-85.)

Resolution of this issue begins with an examination of Rule 26's purpose and evolution regarding expert discovery since its adoption in 1937. The 1970 amendments added the language contained in the specific subsection protecting trial preparation materials of expert witnesses. Advisory Committee Notes, 1970 Amendment, comments to subdivision (b). One purpose of the new language was to eliminate surprise at trial and reduce the time of expert cross-examination by lawyers whose first knowledge of the expert's opinion and reasoning came at trial. *Id.* But the new language also ensured that lawyers would not abuse the work-product privilege by invading the province of expert witnesses:

> "What the [Advisory] Committee sought to promote [in the 1970 amendments to Rule 26] was a fair opportunity to expose whatever weaknesses, unreliabilities, or biases might infect the opinions of testifying experts called by [the] adverse party. Pursuit of such fairness would have been thoroughly frustrated if the rule

---

his expert report and whether other persons, including but not limited to plaintiff's counsel, wrote portions of his final report, and whether Mr. Painter included in his final report portions written by others in edited or unedited form." (Order of November 16, 2012, Dkt. No. 120.)

> prohibited a party from showing that the opinions an expert was presenting at trial
> as his own had in fact been spoon fed to him and written for him by the lawyer
> who retained him."

*United States v. City of Torrance*, 163 F.R.D. 590, 593 (C.D. Cal. 1995), quoting *Intermedics,*

*Inc. v. Ventritex, Inc.*, 139 F.R.D. 384, 389 (N.D. Cal.1991), *aff'd without opinion,*. 991 F.2d 808

(Fed. Cir. 1993).

The 1993 amendments added the requirement under Rule 26(a)(2)(B) that an expert

provide a "detailed and complete" written report stating the testimony and underlying reasoning

the expert expected to give at trial. Advisory Committee Notes, 1993 Amendments, comments

to subdivision (a). The Committee emphasized that this amendment sought to correct the prior

practice of providing "sketchy and vague" answers to opponent's interrogatories about the

"substance" of the expert's testimony, rendering, which were of little use in preparing for the

expert's deposition. *Id.* Testimony not disclosed could not be used at trial, providing the

disclosing party incentive to ensure the expert's report is fully forthcoming. *Id.* The Committee

then noted:

> Rule 26(a)(2)(B) does not preclude counsel from providing assistance to the
> experts in preparing the reports, and indeed with experts such as automobile
> mechanics, this assistance may be needed. Nevertheless, the report, which is
> intended to set forth the substance of the direct examination, should be written in
> a manner that reflects the testimony to be given by the witness and it must be
> signed by the witness.

Advisory Committee Notes, 1993 Amendments, comments to subdivision (a).

The 1993 amendments also imposed the privilege log requirement for documents

"otherwise discoverable" but withheld from an expert's file under claim of privilege. Advisory

Committee Notes, 1993 Amendments, comments to subdivision (b) "The withholding party

must provide sufficient information to enable other parties to evaluate the applicability of the

claimed privilege or protection." *Id.* Each withheld document's date, authors and recipients, and general subject matter must be provided by the party claiming privilege. *Id.* However, "the court ultimately decides whether, if this claim is challenged, the privilege or protection applies. *Id.*

The 2010 amendments added work-product protection for drafts of expert's reports and expert's "preliminary reports" under Rule 26(b)(4)(B).    Advisory Committee Notes, 2010 Amendments, comments to subdivision (b)(4).  The amendments also protect from disclosure attorney-expert communications, in whatever form, to "ensure that lawyers may interact with retained experts without fear of exposing those communications to searching discovery."  *Id.* The amendments specified three exceptions to this protection:  expert compensation, facts or data provided to the expert by counsel and which the expert considered in forming his or her opinion, and assumptions counsel provided to the expert and that the expert relied upon in forming his or her opinions.  *Id.*  Discovery outside these three exceptions or of draft reports may be had only upon a showing of "substantial need."  *Id.*  If that showing is made, the court "must protect against disclosure of the attorney's mental impressions, conclusions, opinions, or legal theories[.]"  *Id.*

Rule 26(b)(4)'s purpose is to protect from disclosure communications between a lawyer and the lawyer's retained expert, including draft or preliminary reports, as attorney work-product, but this protection is not unlimited.  Rule 26(b)(4)'s exceptions preserve the integrity of experts' opinions by making discoverable lawyers' communications that jeopardize the experts' independence.  Here, the parties' dispute presents the question whether Plaintiff's counsel's assistance drafting some or all of Painter's report invokes one or more of the rule's exceptions and removes those communications, including drafts, from Rule 26(b)(4)'s protection.  The

Page 17 - OPINION AND ORDER

answer depends on the nature and extent of the lawyer's assistance:

> The advisory committee note observes that Rule 26(a)(2)(B) does not preclude counsel from providing assistance to the experts in preparing the reports and recognizes that such assistance may be necessary. Courts have followed the advisory committee note and found that counsel may assist the expert in preparing the report, as long as the attorney does not change the substance of the opinion of the expert witness. . . .

> . . . .

> When a challenge is raised as to whether the expert actually prepared the report, courts focus on whether the expert witness offered substantial input into what was put into the report. Whether counsels' assistance in preparing an expert report violates Rule 26 is a fact-specific inquiry.

> The fact that counsel helped with preparation of an expert report goes to the weight to be accorded to the opinions, rather than admissibility.

6 Daniel R. Coquillette, Gregory P. Joseph, et. al., MOORE'S FEDERAL PRACTICE, § 26.23[5] (3d ed. 2012)(footnotes omitted). Others may assist in the preparation of the report but the expert must freely authorize and adopt the changes as his or her own, and the final report must be that of the expert. *Id.*

In *McClellan v. I-Flow Corp., et. al.*, 710 F. Supp. 2d 1092 (D. Or. 2010), Chief Judge Aiken addressed this issue in deciding whether plaintiffs' experts offered reliable testimony on general causation between an allegedly defective medical device known as a "pain pump," and plaintiff's shoulder injury, chondrolysis. *Id.* at 1098.[3] Much of Chief Judge Aiken's opinion resolved defendants' numerous challenges under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993). But separate from their *Daubert* challenges, defendants also asserted that plaintiffs' experts' opinions were "driven by litigation." *Id.* at

---

[3] Glenohumeral chondrolysis is the rapid and permanent loss of cartilage in the shoulder joint. "Pain Pumps" were used to administer local anesthetics during after arthroscopic surgery. *McClellan*, 710 F. Supp. 2d at 1094.

1115. Defendants in part based this challenge on the assertion that "many of plaintiffs' experts' reports were drafted by counsel in violation of Federal Rule of Civil Procedure 26[.]" *McClellan*, 710 F. Supp. 2d at 1118.

Chief Judge Aiken reviewed Rule 26 and the advisory committee notes that elucidated the rule on this point, as well as cases construing the rule. She noted that while Rule 26 "does not prohibit counsel's assistance in preparing or drafting an expert report . . . an expert report 'ghost-written' from 'whole cloth' violates the spirit, if not the letter of the Rule, as do reports that have been altered by counsel or prepared 'merely for appeasement or because of intimidation or some undue influence by the party or counsel who has retained him.'" *McClellan*, 710 F. Supp. 2d at 1118 (citations omitted). She stated that expert reports "may be discredited if they 'merely express the opinions of the lawyers who hired them.'" *Id.* (citation omitted). She then observed:

> Whether counsel's assistance in preparing an expert report violates Rule 26 is a fact-specific inquiry. Generally, I find no more than acceptable editorial assistance from counsel. To the extent counsel's involvement flirted with the outer boundaries of Rule 26, I consider the above principles when discussing each expert's opinion.

*McClellan*, 710 F. Supp. 2d at 1118.

Chief Judge Aiken then evaluated the testimony of those of plaintiffs' experts defendants had challenged to determine whether and to what extent litigation bias had affected their testimony. She began with the opinion of plaintiffs' first of three expert orthopedic surgeons and concluded that it "fail[ed] to reach the threshold of reliability." *Id.* Most relevant to the issue here are Chief Judge Aiken's findings regarding the involvement of plaintiff's counsel, Wihtol, in shaping the expert surgeon's opinion. First, the idea for study upon which the expert surgeon based his opinion originated at least in part with Wihtol, during McClellan's lawsuit. *Id.* at

Page 19 - OPINION AND ORDER

1121. Second, Wihtol provided the patient data for the study. *Id.* Third, Wihtol obtained the patient data from the another surgeon he had sued on behalf of former patients over the same medical device and with whom the surgeon had settled. *Id.* Fourth, Wihtol provided the patient records in electronic format to a nurse he chose for the task of extracting the data used in the study. *Id.* Fifth, Wihtol and the expert surgeon developed the idea for the study and compiled the data for it after Wihtol had retained the expert surgeon as an expert witness and during the litigation. *Id.* Chief Judge Aiken concluded that "[t]hese facts alone raise the disquieting specter of litigation bias." *Id.*

Chief Judge Aiken then found that emails exchanged between Wihtol, the expert surgeon, another of plaintiffs' experts, and the nurse reflected "a degree of involvement by counsel that goes far beyond providing information." *Id.* Chief Judge Aiken quoted excerpts from nine emails as examples of counsel's involvement, and summarized their significance this way:

> Thus, not only did Mr. Wihtol create the idea for the 396-study, provide the raw patient data for the study, and select the nurse to perform data extraction for the study, Mr. Wihtol also compared his (or his "team's") findings from the data with those of [the expert surgeon] and encouraged [the expert surgeon] to do the same, identified patients who should be diagnosed with chondrolysis, conferred with [the expert surgeon] to "correct" diagnoses of chondrolysis, and directed [the expert surgeon] to include certain patients in the study. Contrary to plaintiffs' strenuous assertions, Mr. Wihtol was more than a "mere conduit" for the delivery of raw data.

*Id.* at 1123. Chief Judge Aiken found that the expert surgeon's "analysis was affected, altered, and 'corrected' by Mr. Wihtol or information obtained from him." *Id.* at 1124. Accordingly, she excluded the expert surgeon's testimony. *Id.* at 1125.[4]

---

[4] Chief Judge Aiken also found that the expert surgeon undertook his expert witness task with a preconceived opinion that the medical device at issue caused the plaintiff's injury, and she expressed concern that the unreliable study forming the basis for the expert surgeon's opinion had originated at the suggestion of Wihtol and later had been repeatedly rejected for publication

Chief Judge Aiken next reviewed the testimony of plaintiff's second expert surgeon. Relevant to the issue here, defendants claimed Wihtol drafted this expert's report "in contradiction of the requirements of Rule 26." *Id.* at 1127. Chief Judge Aiken observed:

> Given the evidence presented, it cannot be disputed that Mr. Wihtol authored the report, while [the expert surgeon] reviewed and edited it. In fact, [the expert surgeon] informed Wihtol that part of the report sounded more like "an attorney making his case than a doctor giving his opinion," and that the language should be "toned down" to avoid the appearance of putting "words in [his] mouth."
>
> While I recognize the realities of litigation often necessitate counsel's assistance in the preparation of expert reports, the extent of Mr. Wihtol's role in drafting [the second expert surgeon's] report approaches the outer limits of acceptable assistance. Nevertheless, I do not exclude [the second expert surgeon's] testimony on this ground. Importantly, [the second expert surgeon] conducted his study and formulated his opinion prior to his retention as an expert. Further, through his deposition testimony, [the second expert surgeon] adopted the substance of his report and explained the basis for his opinion. . . . Thus, counsel's involvement does not warrant exclusion of [the second expert surgeon's] testimony, though "it may undermine its weight and credibility."

*Id.* (citations omitted). Thus, Chief Judge Aiken found the second expert surgeon's testimony admissible for trial but also found that counsel's involvement in preparing the expert's report could bear on the weight and credibility to give the expert's trial testimony.[5]

*McClellan* teaches that Rule 26(b)'s attorney work-product protection has limits. Communications between a lawyer and the lawyer's testifying expert are subject to discovery when the record reveals the lawyer may have commandeered the expert's function or used the expert as a conduit for his or her own theories. When the record presents that possibility, the lawyer may not use the attorney work-product privilege as a shield against inquiry into the extent

---

in peer-reviewed journals. *McClellan*, 710 F. Supp. 2d at 1119-21.

[5] Chief Judge Aiken also reached the same conclusion on the same issue with respect to the testimony of plaintiff's third expert surgeon. *Id.* at 1127 n.27.

to which the lawyer's involvement might have affected, altered, or "corrected" the expert's analysis and conclusions.

Here, the record gives rise to the question whether Plaintiff's counsel's involvement in the creation of Painter's expert report exceeded Rule 26's limits. First, Painter's deposition testimony suggests that Plaintiff's counsel might have authored portions of Painter's final report. Painter acknowledged Plaintiff's counsel changed his preliminary report after Painter emailed it to him, and he could not identify the portions of his October 22, 2012, final report that Plaintiff's counsel wrote without comparing the final report to his October 18, 2012, preliminary report. Although Painter testified the final report's conclusions and opinions were his, that statement does not create a barrier to further inquiry. *McClellan* makes clear that the expert's adoption or ratification of a lawyer's changes and additions to the expert's report does not preclude opposing counsel from learning how the lawyer's contributions affected the expert's final opinions, and it does not insulate the expert's opinion from either evidentiary exclusion or challenge through impeachment.

Second, Painter's October 22, 2012, final report contains opinions and analyses about additional parts or areas of Gerke's Matco Tools truck not discussed or mentioned in Painter's October 18, 2012, preliminary report or his second October 18, 2012, report, and the record is unclear how and why Painter arrived at those additional opinions. Only four days passed between the date of Painter's two October 18, 2012, reports and the date of Painter's final report. Painter testified that he never inspected Gerke's tool truck, that Gerke's tool truck is the first Matco Tools truck he has "been involved in," that he was retained and first received the materials for this case on October 15, 2012, that he made no working notes during his review of this case, and that he spent a total of four hours reviewing the file and issuing his report. (Painter

Page 22 - OPINION AND ORDER

Dep. 18, 22-23, 34, 35, 38.) These facts create a genuine question whether Painter came to these additional opinions and analyses so quickly because they were suggested or given to him by Plaintiff's counsel.

Third, additional disclosure is consistent with the privilege exceptions specified in Rule 26(b)(4)(c). Painter's testimony suggests his final report contains facts, data, and assumptions provided by Plaintiff's counsel. If Painter adopted that information as his own opinion and included it in his final report, then under the exceptions Painter considered and relied on that information in forming his opinion. Indeed, the facts, data, and assumptions provided by Plaintiff's counsel might well have become Painter's opinion or have formed part of it.

Accordingly, additional disclosure of communications between Plaintiff's counsel and Painter are warranted, as is a continuation of Painter's deposition to permit further inquiry on this topic by Defendants' counsel. Disclosure includes materials and communications Painter considered, which include any materials he reviewed or received even if he did not rely upon them in reaching his opinions. These rulings are consistent with *McClellan* and with other courts' readings of the limits of Rule 26's work-product privilege protection. *See, e.g., In re Commercial Money Center, Inc., Equipment Lease Litigation*, 248 F.R.D. 532, 537 (N.D. Ohio March 5, 2008) ("For Rule 26 purposes, a testifying expert has "considered" data or information if the expert has read or reviewed the privileged materials before or in connection with formulating his or her opinion.") (collecting cases) (citations and internal quotations omitted); *Pinal Creek Group v. Newmont Min. Corp.*, No. CV-91-1764-PHX-DAE-(LOA), 2006 WL 1817000, at *5 (D. Ariz., June 30, 2006) ("Discovery of documents shown to an expert, but not retained in the expert's file, assures the independence of the expert's thinking, both her analysis and her conclusions. The risk is that the lawyer will do the thinking for the expert, or, more

Page 23 - OPINION AND ORDER

subtly, that the expert will be influenced, perhaps appreciably, by the way the lawyer presents or discusses the information.") (citation and internal quotations omitted); *Synthes Spine Co., L.P. v. Walden*, 232 F.R.D. 460, 465 (E.D. Pa. Dec. 21, 2005) ("Plaintiff's expert must disclose the content of all oral communications that plaintiff's expert considered in formulating his opinions as a testifying expert in this case, regardless of whether these oral communications come from plaintiff's counsel or plaintiff itself. The Court sees no principled distinction between the discoverability of oral and written communications that a testifying expert considers in fashioning her opinions." (collecting cases)); *Kooima v. Zacklift Intern., Inc.*, 209 F.R.D. 444, 446-47 (D.S.D. Aug. 20, 2002) ("As a general rule, the 1993 amendments to Rule 26 of the Federal Rules of Civil Procedure make clear that documents and information disclosed to a testifying expert in connection with his testimony are discoverable by the opposing party, whether or not the expert relies on the documents and information in preparing his report. . . . This includes correspondence between counsel and the expert witness.") (citation and internal quotes omitted); *TV-3 Inc. v. Royal Ins. Co. of America*, 193 F.R.D. 490, 491 (S.D. Miss. May 30, 2000) ("If the attorney hiring the expert sets forth the desired theory of the case on the front end, then the opposing side should have the right to be made aware of the fact that the expert's viewpoint was initially couched by the attorney's desired theory."); *B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of New York, Inc.*, 171 F.R.D. 57, 63 (S.D.N.Y. Jan. 29, 1997) (work-product doctrine did not protect from disclosure attorney's mental impressions, opinions, strategies if expert considered them in forming opinion, including oral communications); *United States v. City of Torrance*, 163 F.R.D. 590, 593 (C.D. Cal. 1995) ("[A]bsent an extraordinary showing of unfairness that goes well beyond the interest generally protected by the work product doctrine, written and oral communications from a lawyer to an expert that are related to matters

Page 24 - OPINION AND ORDER

about which the expert will offer testimony are discoverable, even when those communications would be deemed opinion work product," and noting this approach "is most consistent with the purpose of the Federal Rules of Civil Procedure") (citation and internal quotation marks omitted).[6]

*ORDER*

After review the file Painter submitted to the court, it is hereby ORDERED that the following documents from that file shall be produced to Defendants:

1.  An unredacted copy of Painter's consulting agreement.  Rule 26(b)(4)(c)(i) excepts from non-disclosure of information and communications that "relate to compensation for the expert's study or testimony."  Nothing in or about Painter's consulting agreement suggests the exception should not apply to the entire content of the consulting agreement.

2.  A copy of Painter's October 18, 2012, "Preliminary Report."  This document is disclosed for the reasons discussed above.

3.  A copy of Painter's October 18, 2012, second preliminary report, with attachments. This document is disclosed for the reasons discussed above.

4.  A copy of the November 2, 2012, Declaration of Rob Painter, with attachments.  This document is disclosed for the reasons discussed above.

5.  Copies of jury verdict reporting service summaries of four cases in which Painter testified as an expert witness.  Nothing about these summaries suggests they are protected by the attorney work-product privilege.

6.  A copy of an appellate opinion in a case in which Painter testified as an expert

---

[6] The court reserves for later determination, as appropriate, any questions regarding the admissibility or relevancy of Painter's opinions.

witness. Nothing about this appellate opinion suggests it is protected by the attorney work-product privilege.

7. A redacted copy of Plaintiff's counsel's October 15, 2012, email to Painter posing the questions on which Painter is to render his expert opinion. These questions, as formed, contain assumptions provided by Plaintiff's counsel to Painter.

8. A copy of Plaintiff's counsel's October 22, 2012, email to Painter transmitting an attached document labeled "Rebuttal_Expert_Report_of_Rob_Painter_Oct_22_2012-draft_(2).doc." This document is disclosed for the reasons discussed above.

The court will provide each party's counsel with copies of the above-listed documents accompanied by a copy of this opinion, by mail. The court has retained a complete set of these documents in the court's file. The court will return Painter's original file to Painter, by mail.

FURTHER ORDERED that Plaintiff's counsel is to produce to Defendants' counsel the following documents:

1. All drafts of Painter's expert report in this case, prepared by Painter, Plaintiff's counsel, or any other person. "Drafts" includes inserts, excerpts, proposed language and content, revised or "marked-up" drafts, and any other document prepared for use in or as part of Painter's expert report, whether or not the document or any part of it ultimately was incorporated into Painter's October 22, 2012, final report.

2. All emails, cover letters, memoranda, notes, and other documents transmitting the documents described in No. 1, above.

Plaintiff's counsel shall produce the above-listed documents to Defendants' counsel no later than March 6, 2013.

FURTHER ORDERED that Plaintiff is to make Painter available to Defendants for

Page 26 - OPINION AND ORDER

further deposition regarding the documents and information ordered produced in this opinion, such deposition to be in Portland and to occur at a mutually agreed-upon date, time, and place.

FURTHER ORDERED that as sanctions for violation of the court's November 7, 2012, discovery order and under Rule 37 for failing to make discovery, Plaintiff shall:

1.  Plaintiff shall bear all expense and cost incurred by Painter for round-trip travel, lodging, meals, ground transportation, and any other expenses, to attend his continuation deposition in Portland.  In the event Plaintiff is later deemed the "prevailing party" in this case, these expenses shall not be recoverable costs.

2.  Plaintiff shall reimburse Defendants for the attorney and staff time, and out-of-pocket costs, incurred by Defendants to prepare, serve, and submit their joint *in camera* submission to the court pursuant to the court's November 16, 2012, order.  Defendants' counsel shall present to Plaintiff's counsel an itemized statement of attorney time, staff time, and out-of-pocket costs.  Defendants' counsel shall serve their itemized statement on Plaintiff's counsel no later than March 6, 2013.  Plaintiff shall tender reimbursement to Defendants no later than March 27, 2013.

IT IS SO ORDERED.

DATED this ___19th___ day of February, 2013.

_____
JOHN V. ACOSTA
United States Magistrate Judge